IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CLARENCE BAILEY,              *

    Plaintiff,              *

        v.                   *           CIVIL NO.: WDQ-11-1707

AMERIGAS PROPANE, INC.         *

    Defendant.              *

\* * * * * * * * * * * * *

MEMORANDUM OPINION

Clarence Bailey sued AmeriGas Propane, Inc. ("AmeriGas") for disability and age discrimination, in violation of the Americans with Disabilities Act[1] (the "ADA"). For the following reasons, AmeriGas's motion for summary judgment[2] will be denied.

---

[1] 42 U.S.C. §§ 12101, *et seq*.

[2] AmeriGas captioned its motion as a "motion for summary judgment regarding subject matter jurisdiction." ECF No. 30; *see id.* (moving for summary judgment "pursuant to Federal Rule 12(b)(1)"). In the memorandum accompanying its motion, AmeriGas argues that "primary jurisdiction" rests with the U.S. Department of Transportation (the "DoT"), and, "correspondingly, this Court lacks subject matter jurisdiction" over the case. ECF No. 30-1 at 1. "[D]espite what the term [primary jurisdiction] may imply, [it] does not speak to the jurisdictional power of the federal courts. It simply structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 789 n.24 (4th Cir. 1996) (internal quotation marks omitted). Because AmeriGas's argument is not jurisdictional, and because both parties have submitted substantial matters outside the pleadings

Bailey's motion for leave to file a surreply will also be denied.

I. Background[3]

Bailey worked for AmeriGas from May 2000 to October 2008. Bailey Dep., ECF No. 30-2 at 9:18-21, 16:13-15.[4] From March 2006 until his termination in October 2008, Bailey held the position of service supervisor for AmeriGas's Ranson, West Virginia location. Bailey Aff. ¶¶ 2-3. AmeriGas's job description summarizes the position:

> Supervises Service Technician's day-to-day activities and performance. Works with the District Manager to establish installation and refurbishment benchmarks/objectives. Rides with Service Technicians to coach employees and observe work activities. Works closely with District Manager and Delivery Supervisor as needed to assure that employees are allocated to appropriate activities as needed. Interviews, hires, and trains employees. Appraises employee performance, disciplines employees, addresses complaints[,] and resolves problems as needed.

ECF No. 30-12 at 2; ECF No. 36-2 at 9. Duties and responsibilities of the position include "participat[ing] in ride alongs

---

for the Court's consideration, AmeriGas's motion will be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

[3] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] Bailey's affidavit is undated, but appears to have been signed sometime between July 16 and August 1, 2012. *See* Bailey Aff. ¶ 15 (citing AmeriGas's motion for summary judgment, filed July 16, 2010).

with Service Technicians to evaluate technicians for safety and efficiency." ECF No. 30-12 at 2; ECF No. 36-2 at 9. According to the job description, possession of a commercial driver's license ("CDL") and DoT certification is "preferred." ECF No. 30-12 at 3; ECF No. 36-2 at 10.[5] According to Bailey, after he was promoted to service supervisor, he was "never told" that driving a commercial vehicle was an "essential" function of his job, or that possession of a CDL was a term and condition of employment. Bailey Aff. ¶ 7.

Bailey participated in several AmeriGas service visits while employed as service supervisor, at least one of which required him to drive a commercial vehicle. On January 30, 2007, Bailey and a service technician worked together to perform a gas check and leak testing at a restaurant in Charles Town, West Virginia. Bailey Dep. at 101-02, 104:13-15. On March 21, 2008, Bailey was asked to transport and install a water heater at a campground in Harper's Ferry, West Virginia. *See generally id.* at 81-85. Bailey drove to the campground in an AmeriGas service truck, where he called a service technician for

---

[5] The DoT's "Federal Motor Carrier Safety Regulations" establish "minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers," as well as "minimum duties of motor carriers with respect to the qualifications of their drivers." 49 C.F.R. §§ 391.1, *et seq.* Under § 391.41(a)(1)(i), "[a] person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so."

assistance in removing the old heater and installing the new one. *Id.* at 83, 85:7-13. On another occasion, Bailey and a service technician replaced gas piping at an inn in Harper's Ferry; Bailey's role was to assist with the pressure test and "the lighting of the dryers." *Id.* at 104-06, 108:12-14.

Between March 26, 2008 and September 25, 2008,[6] Bailey went on leave from AmeriGas to address health-related issues. Specifically, Bailey suffered from a herniated disc, for which he underwent two surgeries in 2008: a partial discectomy in May, and a fusion in August. Bailey Dep. at 38-39; Bailey Aff. ¶ 8. After the surgery, on October 7, 2008, Bailey informed his Market Manager Don Lynch, and his direct supervisor Lois Smith, that he had been released by treating physician Charles Winters and was cleared to return to work, albeit under a lifting restriction of 10 pounds for 90 days. Bailey Dep. at 57-58; Bailey Aff. ¶ 9; *see also* ECF No. 36-2 at 7.[7]

In response, Lynch and Smith reminded Bailey that his CDL had expired, and he therefore had to undergo a physical examination to determine his fitness to drive a commercial

---

[6] Smith Aff., ECF No. 4-1 ¶ 3. "Smith" is Lois Smith, Bailey's direct supervisor. *See infra.*

[7] As of October 2008, Bailey also suffered from aortic stenosis, a heart valve disorder. *See* ECF No. 30-4 at 2; Bailey Dep. at. 39-40. Bailey declares that he has suffered from this heart condition since 2001 and had maintained a CDL since then. Bailey Aff. ¶ 15. Bailey further declares that he never suffered from syncope as a result of the condition. *Id.*

vehicle. Bailey Aff. ¶ 10.[8] On October 9, 2008, Bailey attended and passed the DoT physical administered by Doctor Gaylen Johnson at Health@Work and paid for by AmeriGas. Bailey Aff. ¶¶ 10-11; see ECF No. 30-5; ECF No. 36-2 at 18-19.[9] AmeriGas hired consultant AllOne Health to conduct a "surveillance examination" of Dr. Johnson's October 9 report. See Bailey Aff. ¶ 12. On October 15, 2008, AllOne concluded that Bailey could not be medically cleared. ECF No. 30-10. Bailey asserts that the AllOne physician incorrectly relied on the job description for "service technician," rather than "service supervisor," in reaching this decision. Bailey Aff. ¶ 13. Unlike a service supervisor, a service technician is required to hold a CDL, with HazMat and air brake endorsements. ECF No. 36-2 at 12. Correspondingly, the service technician must "meet all medical qualifications outlined in 43 CFR Part 391.41 of the Federal Motor Carrier Safety Regulations." Id.

"Soon after" the AllOne surveillance review, Bailey, Lynch, and Smith held a three-way call. Bailey Aff. ¶ 14. During that call, Bailey was told he was being terminated because AllOne's surveillance review had determined he could not hold a CDL, and

---

[8] Because of Bailey's medical conditions, DoT regulations required him to submit to annual physicals for medical certification. Bailey Dep. at 18-19.

[9] Johnson also issued Bailey's Medical Examiner's Certificate, which allowed Bailey to renew his CDL. Bailey Aff. ¶ 11; see ECF No. 36-2 at 22.

5

because "corporate" felt that Bailey had "been out of work for too long" and "was not 100%." *Id.* Bailey believes that the true reason for his termination was that AmeriGas viewed him as disabled. *Id.* ¶ 16. Bailey's employee termination form indicated that the reason for his termination was that he "did not return after [leave of absence]." ECF No. 36-2 at 26.[10] After his termination, Bailey also asked whether any other positions were available, and was told none was. Bailey Dep. at 48:17-20.

In August 2009, Bailey was hired by the Maryland State Department of Public Safety Correctional Services. Bailey Dep. at 11:3-4, 15:7-8.

On June 22, 2011, Bailey sued AmeriGas, alleging violations of the ADA, Title I of the Civil Rights Act of 1991 ("Title I"),[11] the Age Discrimination in Employment Act of 1967 (the "ADEA"),[12] and the FMLA. ECF No. 1. On August 8, 2011, AmeriGas moved to dismiss for failure to state a claim. ECF No. 4. On September 8, 2011, Bailey opposed that motion and moved to amend the complaint to exclude all but the ADA claims. ECF Nos. 8, 10. On September 21, 2011, AmeriGas opposed Bailey's motion to

---

[10] Under the "Reason for Termination" heading, there is an available box for "DOT Qualifications." ECF No. 36-2 at 26. That box was not checked. *Id.*

[11] 42 U.S.C. §§ 1981a, *et seq.*

[12] 29 U.S.C. §§ 621, *et seq.*

amend and replied to Bailey's opposition to the motion to dismiss. ECF No. 11. On January 31, 2012, the Court granted Bailey's motion to amend and denied AmeriGas's motion to dismiss the amended complaint. ECF Nos. 13, 14. Also on January 31, Bailey filed the amended complaint. ECF No. 15. On February 24, 2012, AmeriGas answered the amended complaint. ECF No. 16.

On July 16, 2012, AmeriGas moved for summary judgment "regarding subject matter jurisdiction." ECF No. 30. On August 1, 2012, Bailey timely opposed AmeriGas's motion. ECF No. 36. On August 14, 2012, AmeriGas timely replied. ECF No. 37. On August 24, 2012, Bailey moved for leave to file a surreply. ECF No. 43. On August 27, 2012, AmeriGas timely opposed Bailey's motion. ECF No. 44.

II. Analysis

A. Bailey's Motion for Leave to File a Surreply

Bailey seeks leave to file a surreply to AmeriGas's motion for summary judgment because AmeriGas--for the first time in its reply--attached and relied on an affidavit by Lynch, which included "many" allegations that were not "part of" the motion for summary judgment. ECF No. 43 at 1. AmeriGas counters that it submitted Lynch's testimony to refute Bailey's "self-serving, incorrect, and untimely" testimony. ECF No. 44 at 1-2. AmeriGas further notes that Bailey "may not claim prejudice"

7

when he "unilaterally elected to forego taking [Lynch's] deposition." *Id.* at 2.

Unless otherwise ordered by the Court, a party may not file a surreply. Local Rule 105.2(a) (D. Md. 2012). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in the opposing party's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

Bailey attached to his opposition an undated affidavit that purported, in part, to state AmeriGas's views on whether operation of a commercial motor vehicle is an "essential function" of the service supervisor position. *See* Bailey Aff. ¶ 17 ("I could perform the essential functions of my position without a CDL."). Lynch's affidavit, which AmeriGas attached to its reply, states the contrary. *See generally* ECF No. 37-2. Thus, Bailey had the first word on the "essential function" issue. *Cf. Khoury*, 268 F. Supp. 2d at 605. As both sides of the argument have been presented, Bailey's motion for leave to file a surreply will be denied.

B. AmeriGas's Motion for Summary Judgment

1. Legal Standard

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).[13] In considering the motion, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). A party opposing summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 525.

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to

---

[13] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

discover information that is essential to [his] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks and citation omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit." *Id.* "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Sufficient time for discovery is "considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 246-47 (internal quotation marks omitted).

2. The ADA and DoT Regulations

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability who is an . . . employee." *Id.* § 12112(b)(5)(A).

To establish a *prima facie* case of wrongful discharge under the ADA, a plaintiff must demonstrate that: "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). To be within the ADA's "protected class," one must be "a qualified individual" with a disability. 42 U.S.C. § 12112(a). A "qualified individual" is a person who, "with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).[14] "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

---

[14] To establish a *prima facie* case of failure to accommodate, a plaintiff must similarly demonstrate that, with reasonable accommodation, he could "perform the essential functions of the position." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (internal quotation marks omitted).

11

The burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to ADA claims. *Ennis v. Nat'l Ass'n of Business & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Under *McDonnell Douglas*, if the plaintiff succeeds in proving a *prima facie* case of discrimination by a preponderance of the evidence, the burden "shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* If the defendant meets this burden of production, the presumption created by the *prima facie* case "drops out of the picture," and the plaintiff bears the ultimate burden of proving that he has been "the victim of intentional discrimination." *Id.*

The ADA's implementing regulations list "[d]efenses" to allegations of discrimination under the statute. 29 C.F.R. § 1630.15. Under subsection (e) ("Conflict with other [f]ederal laws"),

> [i]t may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action (including the provision of a particular reasonable accommodation) that would otherwise be required by this part.

Relevant here, Congress has given the Secretary of Transportation the authority to prescribe the qualifications of

12

drivers for motor carriers. 49 U.S.C. § 31305(a). The DoT's Federal Motor Carrier Safety Administration ("FMCSA") accordingly promulgated the "Federal Motor Carrier Safety Regulations," which "establish minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers," as well as "minimum duties of motor carriers with respect to the qualifications of their drivers." 49 C.F.R. §§ 391.1, *et seq.* Under § 391.41(a)(1)(i), "[a] person subject to this part must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so." Specifically, a physician must certify that the driver "does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." *Id.* § 391.43. Proscribed conditions include "any . . . cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." *Id.* § 391.41(b)(4).

The DoT regulations also specify appeal procedures for a driver who disagrees with a physician's determination that he is not DoT-certifiable. Specifically, a driver may apply for a "Skill Performance Evaluation" ("SPE") Certificate, which, if granted by FMCSA, allows the driver to continue driving a commercial vehicle despite being physically unqualified. *See generally* 49 C.F.R. § 391.49. When medical evaluations are in

conflict, the driver may also appeal to the Director of the Office of Bus and Truck Standards and Operations. *Id.* § 391.47. The Director's decision is subject to review, within 60 days, by petition to the Assistant Administrator. *Id.* § 386.13(a).

3. The Merits

Bailey has alleged that AmeriGas violated the ADA because it refused to make reasonable accommodations and fired him for having a disability. Am. Compl. ¶¶ 32, 37. AmeriGas argues that the doctrine of primary jurisdiction "require[s]" this Court to refer the entire dispute to the DoT. ECF No. 30-1 at 1. Bailey counters that DoT regulations are "not relevant" to the facts of this case. ECF No. 36-1 at 19. Bailey further argues that AmeriGas's motion is "procedurally flawed" because it fails to show that possession of CDL was an essential element of his position. *Id.* Citing Fed. R. Civ. P. 56(d), Bailey alternatively asserts that more discovery is needed before this Court may properly consider AmeriGas's motion. *Id.*

The doctrine of primary jurisdiction is "a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). When it applies, the doctrine "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an

14

administrative ruling." *Id.* AmeriGas argues that the doctrine applies here, because--regardless of the "correctness" of AllOne's decision that Bailey was not physically qualified to drive a commercial vehicle--"the fact that such determination was made puts the nature of that factual finding within the exclusive purview of the [DoT] pursuant to statute and [DoT] regulations and guidelines." ECF No. 30-1 at 8. Even if true, AmeriGas's argument misses the point. The central issue is not whether AllOne's medical examination was properly conducted, or its conclusion medically sound, but whether Bailey could perform the essential functions of his job despite being unqualified to drive a commercial vehicle. If he could, there is no conflict between the ADA and the DoT regulations, and this defense to liability does not apply. *See* 29 C.F.R. § 1630.15(e). The Court is well-equipped to resolve this threshold issue. The primary jurisdiction doctrine does not apply.

Having determining that primary jurisdiction over the instant dispute rests with this Court, not the DoT, genuine disputes of material fact preclude this Court's entry of summary judgment for AmeriGas. As discussed above, to establish a *prima facie* case of wrongful discharge or failure to accommodate under the ADA, a plaintiff must demonstrate that he is within the ADA's protected class. *Haulbrook*, 252 F.3d 696, 702 (4th Cir. 2001). To be within the ADA's "protected class," one must be "a

qualified individual" with a "disability." 42 U.S.C. § 12112(a). Here, the parties principally dispute the first of these requirements. A "qualified individual" is a person who, "with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).[15] Evidence of whether a particular function is essential includes:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

The evidence is conflicting about whether Bailey could perform the essential functions of his position without being certified to hold a CDL. AmeriGas asserts that operation of a commercial vehicle "clearly comprises" an essential function of the service supervisor's position. ECF No. 37 at 9; Lynch Aff.

---

[15] To establish a *prima facie* case of failure to accommodate, a plaintiff must similarly demonstrate that, with reasonable accommodation, he could "perform the essential functions of the position." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (internal quotation marks omitted).

¶ 5. Bailey declares that it does not. Bailey Aff. ¶¶ 5, 17. The job description for service supervisor indicates that duties and responsibilities of the position include "participat[ing] in ride alongs with Service Technicians to evaluate technicians for safety and efficiency." ECF No. 30-12 at 2; ECF No. 36-2 at 9. Possession of a CDL and DoT certification is "preferred" (by inference, not required). ECF No. 30-12 at 3; ECF No. 36-2 at 10. By contrast, a service *technician* must "meet all medical qualifications outlined in 43 CFR Part 391.41 of the [FMCS] Regulations." *Id.* At his deposition, Bailey testified that he "typically" drove into the field in an AmeriGas vehicle, but that he used a personal vehicle "at times." Bailey Dep. at 44-45. Lynch declares that, as of October 2008, AmeriGas's Ranson location employed one service supervisor and seven service technicians, because of which "it was vital that all [personnel] have the capacity to drive AmeriGas service vehicles on an as-needed (and sometimes emergency) basis." Lynch Aff. ¶¶ 6, 8.

On the basis of the available record, and drawing all justifiable inferences in Bailey's favor, this Court cannot determine, as a matter of law, that being qualified to drive a commercial vehicle was an "essential function" of the position of service supervisor. AmeriGas's motion for summary judgment will therefore be denied. *Anderson*, 477 U.S. at 255.

III. Conclusion

For the reasons stated above, AmeriGas's motion for summary judgment will be denied. Bailey's motion for leave to file a surreply will also be denied.

_3/14/13_  
Date

_/s/ William D. Quarles_  
William D. Quarles, Jr.  
United States District Judge